UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X   Case No.:
VAUGHN PITT,

                              Plaintiff,

     -against-                                           **COMPLAINT**

RICHARD N. SILVERSTEIN, MD *individually*,
DETAIL PROS, INC d/b/a THE DETAIL PROS        **PLAINTIFF DEMANDS**
MOBILE HAND WASH AND DETAIL SPECIALISTS,   **A TRIAL BY JURY**
and ROBERT BREHAULT, *individually*,

                              Defendants.
------------------------------------------------------------------X

      Plaintiff, VAUGHN PITT, by Plaintiff's attorneys, PHILLIPS & ASSOCIATES, ATTORNEYS AT LAW, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

      Throughout his employment, Plaintiff, VAUGHN PITT, was discriminated against and suffered a hostile work environment which was created and permitted by the Defendants on the basis of his race (Black) when Defendants mocked and degraded and intimidated Plaintiff. Plaintiff, while merely trying to get through the task of *cleaning Defendant Dr. Richard SILVERSTEINS's car*, was subjected to Defendant SILVERSTEIN rambling about a "black guy" that he believed was dangerous. **Outrageously, Defendant SILVERSTEIN brandished his gun menacingly as if to prove something to Plaintiff**. Defendant SILVERSTEIN and Defendant BREHAULT were fixated on Plaintiff's race, at one point, making a racially offensive "prank call" to Plaintiff's cell phone and asking Plaintiff if he eats **"fried chicken and watermelon."**

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. § 1981 ("Section 1981") and the New York State Human Rights Law, New York State Executive Law § 296, *et seq.* ("NYSHRL"). Plaintiff

1

seeks damages to redress the injuries he has suffered as a result of being subjected to a hostile work environment and discriminated against on the basis of Plaintiff's race (Black).

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C § 1981, and 28 U.S.C. §§ 1331 and 1343.

3. This Court has supplemental jurisdiction over Plaintiff's claims brought under state and municipal law pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this district, pursuant to 28 U.S.C. § 1391(b), based upon the fact that the claims alleged herein took place within the Southern District of New York.

## PARTIES

5. At all times relevant, Plaintiff is a resident of the State of South Carolina, City of Charleston.

6. At all times material, Defendant DETAIL PROS, INC. d/b/a THE DETAIL PROS MOBILE HAND WASH AND DETAIL SPECIALISTS ("DETAIL PROS") is and was a domestic business corporation organized under the laws of the State of New York, with its principal place of business located at 16 Fifth Avenue, Newburgh, New York 12550.

7. At all times material, Defendant DETAIL PROS was contracted to provide detailing work on various motor vehicles, including cars, boats and motorcycles throughout the State of New York.

8. At all times material, Defendant ROBERT BREHAULT ("BREHAULT") is and was the owner of Defendant DETAIL PROS.

9. At all times material, Defendant BREHAULT was Plaintiff's manager and had managerial and supervisory authority over Plaintiff.

10. Defendant BREHAULT had the power to hire, fire and/or directly affect the terms and conditions of Plaintiff's employment, and direct Plaintiff's daily work activities.

11. At all times material, Defendant DR. RICHARD N. SILVERSTEIN ("SILVERSTEIN") is and was a customer of Defendant DETAIL PROS and Defendant BREHAULT.

12. At all times material, Defendant SILVERSTEIN was a customer to whom Plaintiff was assigned by Defendant BREHAULT.

13. At all times material, Plaintiff was ordered to perform work on Defendant SILVERSTEIN's vehicles at his private residence, located in Chappaqua, New York.

14. At all times material, Plaintiff often rendered services to Defendant DETAIL PROS's customer, Defendant SILVERSTEIN.

15. At times material, Defendant DETAIL PROS was Plaintiff's employer under the NYSHRL.

16. At all times material, Defendant BREHAULT was Plaintiff's employer under the NYSHRL.

17. At times material, Defendant SILVERSTEIN acted in the capacity of Plaintiff's employer under the NYSHRL.

18. At all times material, Defendant SILVERSTEIN specifically demanded that Plaintiff provide him detailing services.

19. At all times material, Plaintiff was an employee of Defendant DETAIL PROS, Defendant BREHAULT, and Defendant SILVERSTEIN.

20. At all times material, Defendant DETAIL PROS, Defendant BREHAULT and Defendant SILVERSTEIN were integrated and/or joint employers of Plaintiff as they had an

interrelation of operations, common management, and/or centralized control of labor relations.

21. In the alternative, assuming *arguendo* that Defendant SILVERSTEIN was not an employer of Plaintiff, Defendant SILVERSTEIN did aid and abet Defendant DETAIL PROS and Defendant BREHAULT in the discrimination of Plaintiff.

22. Defendant DETAIL PROS, Defendant BREHAULT and Defendant SILVERSTEIN are at times collectively referred to as "Defendants."

23. At all times material, all parties mentioned herein worked and/or continue to be employed at the Location.

## MATERIAL FACTS

24. On or about May 24, 2021, Defendants hired Plaintiff as a "Detail Specialist."

25. Plaintiff worked approximately 60 hours per week, Monday through Friday, and weekends when available.

26. Plaintiff earned approximately $145 per day, Monday through Friday, and $200 per day on Sundays, plus gratuities as an employee for Defendants. Plaintiff's weekly earnings were approximately $1,100, or approximately $57,200 per year.

27. Plaintiff is and was a qualified and talented Detail Specialist and Technician and always performed his duties well.

28. Plaintiff was required by Defendant BREHAULT to work remotely at locations as requested by customers throughout the Hudson Valley and New York State.

29. Defendant BREHAULT provided Plaintiff with all work assignments and locations.

30. Throughout Plaintiff's employment with Defendant DETAIL PROS, Defendant BREHAULT created and fostered a hostile work environment for Plaintiff on the basis of Plaintiff's race (Black).

31. Defendant SILVERSTEIN is and was a close friend and customer of Defendant BREHAULT.

32. Shortly after the onset of Plaintiff's employment, Defendant BREHAULT, along with Defendant SILVERSTEIN, harassed and embarrassed Plaintiff.

33. In or around June 2021, Plaintiff was assigned and began to work at the home of Defendant SILVERSTEIN at 54 Carolyn Place, Chappaqua, New York 10514 at the direction of Defendant BREHAULT.

34. At the first meeting, Defendant SILVERSTEIN made it clear to Plaintiff that he had an animus against Black people. Specifically, Defendant SILVERSTEIN recounted a story for Plaintiff and stated in sum and substance that, **"a black guy once tried to rob me."** It was clear to Plaintiff that Defendant SILVERSTEIN specifically described this encounter to Plaintiff because he is also Black.

35. During the first meeting, while Defendant SILVERSTEIN rambled to Plaintiff about an encounter he had with a Black person, Defendant SILVERSTEIN asked Plaintiff repeatedly, in a nearly belligerent and accusatory manner, **"So do you know what I did? Do you know? Do you want to know"? Do you want to know what I did?"** Defendant SILVERSTEIN then revealed that he had a firearm by brandishing his gun in front of Plaintiff, boastfully.

36. Terrified, Plaintiff asked Defendant SILVERSTEIN to put the gun away and advised that he did not like guns.

37. Defendant SILVERSTEIN continued to fixate on Plaintiff's race during his first meeting with Plaintiff. At a certain point, Defendant SILVERSTEIN began to ramble to Plaintiff about his hatred for the former and first Black president, Barack Obama.

38. Horrified, Plaintiff complained to Defendant BREHAULT of the incident and indicated that he was uncomfortable working at the home of and for Defendant SILVERSTEIN. Defendant BREHAULT deflected Plaintiff's concerns by talking down to him, laughing at him, and responding that "sometimes doctors don't know how to handle people".

39. Even though Plaintiff objected, Defendant SILVERSTEIN requested that Plaintiff work at Defendant SILVERSTEIN's home, consistently detailing his family's vehicles.

40. Plaintiff requested that he be relocated by Defendant BREHAULT to the owner's car wash or assigned to other customers. Plaintiff's request was ignored.

41. Defendant SILVERSTEIN and Defendant BREHAULT continued to assign Plaintiff to provide detail services to Defendant SILVERSTEIN, against Plaintiff's objection.

42. In or around the summer of 2021, Plaintiff began to report to Defendant SILVERSTEIN directly, working at his home.

43. Plaintiff continued to ask Defendant BREHAULT not to work at Defendant SILVERSTEIN's home as Plaintiff was uncomfortable due to the racial epithets coming from Defendant SILVERSTEIN.

44. However, Plaintiff felt pressure to acquiesce to Defendants demands that he perform work for Defendant SILVERSTEIN, as he was afraid that refusing to do so would result in the termination of his employment.

45. On one occasion, Defendant SILVERSTEIN along with Defendant BREHAULT, mocked and demeaned Plaintiff by asking him **"Why does New York have Black people cleaning cars?"** Plaintiff felt like he was just the target of their racially offensive comments.

46. Even though Plaintiff requested that he not work at the home of Defendant SILVERSTEIN, Defendant BREHAULT forced him to continue detailing the vehicles of Defendant SILVERSTEIN and his wife.

47. Plaintiff was always upset and offended when Defendant BREHAULT and Defendant SILVERSTEIN directed racial comments towards him.

48. Defendant BREHAULT would always respond to Plaintiff's obvious discomfort by laughing. When Plaintiff approached Defendant BREHAULT about the derogatory comments made to him, Defendant BREHAULT indicated that he and Defendant SILVERSTEIN were "just kidding."

49. On one occasion in October 2021, Defendant BREHAULT gave Defendant SILVERSTEIN Plaintiff's personal cell number and they, jointly, began "prank calling" Plaintiff.

50. On or about October 21, 2021, Defendant BREHAULT and Defendant SILVERSTEIN called Plaintiff at his personal cell number and indicated, in sum and substance, that they were **"detectives or officers from Equal Employment Opportunity Employment Office and appreciated a return call."**

51. Plaintiff was initially confused about who was calling him but it soon became obvious.

52. On or about October 21, 2021, during another prank phone call, Defendant SILVERSTEIN asked Plaintiff if he eats **"fried chicken and watermelon."** Defendant BREHAULT, who was present with Defendant SILVERSTEIN, burst out laughing and repeated the question

to Plaintiff. Plaintiff was offended and embarrassed by Defendants repeated insensitive and ignorant racial comments.

53. Plaintiff tried to ignore Defendants' racially offensive comments about "fried chicken and watermelon" by responding "I didn't say that." Plaintiff was extremely uncomfortable.

54. Plaintiff complained to Defendant BREHAULT more than once regarding his and Defendant SILVERSTEIN's racist comments, yet his complaints were continuously ignored.

55. Defendant BREHAULT did nothing to address Plaintiff's concerns and the offensive comments continued.

56. Plaintiff felt ashamed continuing to work for racists.

57. On or about November 13, 2021, Defendant BREHAULT called Plaintiff on a Sunday demanding that he get to work on a customer's boat immediately. That particular Sunday, Plaintiff had not initially been scheduled to work. However, the day before, Defendant BREHAULT told Plaintiff he would have to travel to Long Island to detail a boat on Sunday, Plaintiff's day off. No time of day was specified.

58. On November 13, 2021, Plaintiff sought to get an early start on the job in Long Island and drove to Defendant BREHAULT's office well before 9am, stopping down the street to pick up breakfast. Though no specific time was set, Defendant BREHAULT called Plaintiff and berated him for not arriving earlier. He shouted at Plaintiff to, "get to work immediately". Plaintiff responded to Defendant BREHAULT that it should have been his one day off and stated that he was just down the street from Defendant picking up breakfast and that he would be at the office in 10 minutes. Defendant BREHAULT responded by terminating Plaintiff's employment.

59. It was obvious to Plaintiff that Defendant BREHAULT was targeting him as a Black man.

60. It was clear that Defendant BREHAULT was demonstrating his power and authority over the young, Black employee by imposing an arbitrary, cruel, and senseless punishment on him, i.e., terminating his employment.

61. Plaintiff was Defendant DETAIL PRO and Defendant BREHAULT's only Black employee, and he was forced to perform more work than his white or Latino co-workers.

62. As a result of the hostile work environment and harassment, created and perpetuated by Defendants, Plaintiff suffered from depression and embarrassment when going to work every morning.

63. Upon information and belief, Plaintiff was a hard-working employee, who took minimal time off and frequently offered to cover for other employees.

64. Defendants knew or should have known of the discriminatory conduct and failed to take corrective measures within its control.

65. But for Defendant BREHAULT's position at Defendant DETAIL PROS, Defendant BREHAULT would not have been able to subject Plaintiff to the discriminatory treatment and hostile work environment alleged above.

66. But for Plaintiff's position working for Defendants, Defendant SILVERSTEIN would not have otherwise been able to subject Plaintiff to discriminatory treatment based on his race.

67. Even assuming *arguendo*, that Defendant SILVERSTEIN is not considered to be an employer of Plaintiff, Defendant SILVERSTEIN nonetheless did aid and abet Defendant DETAIL PROS and Defendant BREHAULT in the discrimination of Plaintiff.

68. Plaintiff was repulsed, offended, disturbed, humiliated, and disgusted by this blatantly unlawful racial harassment, discrimination, and hostile work environment.

69. Defendants created a hostile work environment which unreasonably interfered with Plaintiff's ability to perform Plaintiff's job.

70. The above are just some of the comments and conduct which contributed to the race-based hostile work environment that Plaintiff experienced on a regular basis while employed by Defendants.

71. Defendants treated Plaintiff this way solely due to Plaintiff's race (Black).

72. Defendants acted intentionally and intended to harm Plaintiff.

73. Defendants unlawfully harassed, humiliated, degraded, and belittled Plaintiff. As a result, Plaintiff suffers loss of rights, emotional distress, and loss of income.

74. Plaintiff's performance was, upon information and belief, above average and satisfactory while working for Defendants.

75. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

76. Defendants acted maliciously, willfully, outrageously, and with full knowledge of the law.

77. As such, Plaintiff demands punitive damages as against all Defendants, jointly and severally.

**First Cause of Action for Discrimination**
**Under 42 U.S.C. § 1981**
**(Against All Defendants)**

78. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

79. 42 U.S.C. § 1981 provides, in pertinent part:

> (a) Statement of Equal Rights.  All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

>   proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

80. Defendant SILVERSTEIN, Defendant DETAIL PROS, and Defendant BREHAULT engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, by discriminating against Plaintiff because of his race (Black).

81. Defendant SILVERSTEIN, Defendant DETAIL PROS, and Defendant BREHAULT violated the sections cited herein as set forth.

82. Plaintiff is entitled to the maximum amount allowed under this statute.

## Second Cause of Action for Discrimination
## Under the New York State Executive Law
## (Against All Defendants)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. New York State Executive Law § 296(1) provides that:

    It shall be an unlawful discriminatory practice:

    (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

85. Defendant SILVERSTEIN, Defendant DETAIL PROS, and Defendant BREHAULT engaged in unlawful employment practices prohibited by the New York State Executive Law by discriminating against Plaintiff because of his race (Black).

11

86. Defendant SILVERSTEIN, Defendant DETAIL PROS, and Defendant BREHAULT violated the sections cited herein as set forth.

87. Plaintiff is entitled to the maximum amount allowed under this statute.

### Third Cause of Action for Discriminatory Discharge
### Under the New York State Executive Law
### (Against All Defendants)

88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. New York State Executive Law § 296(1) provides that:

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, familial status, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

90. Defendant SILVERSTEIN, Defendant DETAIL PROS, and Defendant BREHAULT engaged in unlawful employment practices prohibited by the New York State Executive Law by discriminating against Plaintiff and terminating Plaintiff because of his race (Black).

91. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fourth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Against Defendant BREHAULT Only)

92. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

93. New York State Executive Law § 296(6) provides in pertinent part, that it shall be an unlawful discriminatory practice "…for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

94. Defendant BREHAULT violated the statute cited herein as set forth.

95. Plaintiff is entitled to the maximum amount allowed under this statute.

### Fifth Cause of Action for Discrimination
### Under the New York State Executive Law
### (Against Defendant SILVERSTEIN Only)

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97. New York State Executive Law § 296(6) provides in pertinent part, that it shall be an unlawful discriminatory practice "…for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

98. Defendant SILVERSTEIN violated the statute cited herein as set forth.

99. Plaintiff is entitled to the maximum amount allowed under this statute.

### JURY DEMAND

100. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. § 1981, as amended and the New York State Human Rights Law, New York State Executive Law § 296, *et. seq.*, in that Defendants discriminated against Plaintiff and created a hostile work environment based on Plaintiff's race (Black) and unlawfully terminated Plaintiff;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful harassment, discrimination, retaliation, and conduct and to otherwise make Plaintiff whole for any losses suffered because of such unlawful employment practices;

C. Plaintiff compensatory damages for mental and emotional injury, distress, pain, suffering and injury to Plaintiff's reputation in an amount to be proven;

D. Awarding Plaintiff damages for loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails;

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff liquidated damages;

G. Awarding Plaintiff prejudgment interest;

H. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of this action; and

I. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
       May 13, 2022

PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC

By: _____
Steven Fingerhut
*Attorneys for Plaintiff*
45 Broadway, Suite 430
New York, New York 10006
(212) 248-7431
sfingerhut@tpglaws.com